Judge Mills
delivered the Opinion of the Court.
David Williamson, who was a merchant of externaive dealings, and possessed of a large estate, in the year 1814 stopped payment—
And made ah assignment or conveyance of his estate, to John W. Hunt, James Haggin, William W Worsíey, and Thomas January, in trust, to soeure certain debts therein named, and certain etC dorsers, and sureties therein specified. It does not certainly appear that the deed included all he sesfed, as it lias.no clause passing the residuum, Out from its minutely descending to articles inconsidenable and of little value, the presumption is, that his whole estate was included; nor is there any expression showing that the deed was for the benefit of general creditors; but only for those named,' whose debts were to be paid according to certain, preferences of grade pointed out in the deed, and the balance remaining was to be restored to Williamson. These- trustees were to expose the estate to sale for the purpose of paying these debts, on the. written requisition of the creditors. Among other things conveyed, was a farm near Lexington, n.w the subject of contest, containing about one. hundred and sixty acres of land, which Williamson had purchased of *450 Lewis Saunders and had not, at the date of the deed» obtained a conveyance, but had paid part of the purchase-money.
A lottery is made by Williamson setting up,among other property, the land 'in contest as one-prize.
White draws the land as his prize.
Saunders, in whom the le-gál title hah remained, conveys to White.
Public notice of the lottery-
Creditors ‘require, trustees so)), an-J Prentiss ¡-urcbasi.s the land in contest.
Conveyance of the trusiees to Prentiss.
Williamson afterwards, While the trustees held the deed and before they had sold any part of the estate, published a scheme of a private lottery, in which lie set up the same estate conveyed by said deed of trust, as prizes, at a value fixed thereon by ‘himself, and industriously sold tic kets in the scheme, at the price of one hundred dollars each, some of which were paid for, and as to others, it is denied in this controversy, that they were ever paid for.
Philip’White, formerly the defendant in this suit in the court below, and the ancestor of the present appellants, against whom it has bed» revived on his death pending this suit, bought and paid for one of those tickets, and drew in the lottery as his prize the -aforesaid farm of one hundred and sixty acres—
And to get the title to the land Williamson arranged the matter with Saunders and setlled what: was due him, and he, on the direction of Williamson, conveyed the legal estate, to White, who took possession thereof and has held it ever since.
This lottery was publicly made, and drawn m the town of Lexington, where these trustees and most of the creditors resided.
After these events, the trustees received the written requisitions of the creditors to sell the. estate, Which was done at auction by the trustees, and Thomas G. Prentiss purchased the/arm in question» at the price of ¿>3050, on the 8th day of January, 1818.
And the trustees thereupon executed to him a writing, setting out their sale and his purchase, and statting that “most of the properly sold was claimed by others,” and stipulating that they “were in no event to be responsible upon the sale,”-and they “transfered to Prentiss all the title to, and all claim upon the property, which they possessed and could convey,” and engaged “to execute any other writing deemed expedient to effectuate the true intent and meaning of this salo to the said Prentiss or his assignee, lie giving reasonable notice thereof. And for any delect of title the said Prentiss bad recourse *451 Alione to the creditors, Williamson and his vendors.w
Prentiss’ bill against White. .
Answer of the trustees.
White’s answer, denying notice,and alleging (hat Williamson had paid Saunders the purchase money out of the proceeds of the lottery, arid in-, sisting on his legal title and possession—
Alleging alia the trustees had encouraged the lottery, -had notice and participated in the lottery, and suppressed a public notice, and opposition by the credit-
insisting aisrjg. t&e deed ví^ fraudulent anil void as to'fbr creditors, Sic: Sic.
*451 Prentiss then filed this bill, making the trustees and "VThite defendants, stating these facts and praying that his purchase might be completed, that White may bo compelled to surrender the legal title and possession of this farm and account for the rents and profits.
The trustees answer, and admit the deed, sale, and right of Prentiss, and unite in the prayer against White.
White answered admitting that lie acquired the title and possession of the lot as stated, and denies any notice which is charged against him, of there being any deed of trust upon the lot at the time, he purchased and paid for his ticket, and of his reception of the title from Saunders.
Hd alleges that Williamson paid the balance of the purchase-money to Saunders out of the money received for tickets, and then Saunders agreed to convey the title. ife also insists that his title and possession ought not to be disturbed, however illegal the lottery may have been on the part of Williamson, that its illegality could not operate upon him, ami that he is entitled to hold the lot as a purchaser banajide.
Ho also alleges that the trustees encouraged the lottery for the very property which they claimed by their deed, and bought tickets,, and were present in the same town, and never intimated any thing of their deed, nor forbade the disposition of the property by lot, and that they silenced some of the creditors, whose rights were secured by the deed and who were about to prevent the lottery by a publication, and suppressed the publication, and that it is now unjust to permit the trustees to fo.sfer tbeschcme^ till .che public were swindled out of their money for. tickets, and then to seize and sell the property to. raise additional sums. He further calls upon the. trustees to account for their trust and to shew whether the debts were paid, and whether there is a deficit to subject this farm.
He also contends that,the deed is fraudulent and void as to tho creditors of .Williamson, who were *452 not named therein, and even as to those who arc named, because they liad not assented to the deed, but many of them pursued the recovery of their debts against the 'deed; and he insists, that’as the deed contravenes Hie rights of others, the purchaser, Prentiss, who is named as a creditor or endorser secured by the deed,'ought not to be permitted thereby to take from him ihe/advantage at law. He also adds sundry interrogations ibr the trustees and’Prentiss io ansu ei\ to which they respond. But we deem it nof necessary for the present-to notice them.
f>ecree-of. the cir'iuit court against White fur a surrender'of the title anti, possession k tor rents'.'- '
Questions as io the validity of the fiec'l df ‘rust, and whslher White is entitled to raise il, waived.
Trasteos admit notice Of the lottery, but ilenyparticipation.
Two of the trustees adía ó they induced' a creditor to sup- ' press a handípilJ, publish-' ins his claim under the :' ,áeed and for-■biding the ' ' ilTaiVins.
The court below decreed, that the heirs of White should convey and surrender possession of the lot, and pay the rents during occupancy. From this decree they have appealed.
We do not deem it necessary for the purpose of deciding this cause, to determine whether this deed of trust is, or is’not fraudulent as to creditors; or whether White is such a purchaser for a valuable consideration as ought to be protected against it, or is in’ a situation to mab,c the question.’ For if it bo conceded that the deed was in its'ereation valid, and that (he siatqte’to prevent such private lotteries, operated in the same manner against the purchasers that they do’against (he vendors of tickets, a point which cannot be maintained (we mean (he statutes in force prior to 1816, which alone operate on this transaction,) still we apprehend that the result iii this cause is the same.
it is denied by the trustees that they purchased tickets'or took any direct part in the lottery. But they admit that they knew of if, and that it included the property conveyed b.y_ the deed, and were iit town when (he lottery was drawn and did hot think proper’to interfere and prevent it, though they deny being'present at the drawing.
' Two of. then's admit that on the day when the drawing commenced, they were present at an altercation between Williamson aiid Trotter, one of the creditors named in and secured by the deed. That Trotter liad prepared a publication to apprise the public of his claims against the property, and insisted upon setting-if up, which Williamson resisted till harsh words ensued, and that they, the two tru.* *453 tees, interfered, merely as mutual friends to conciliate the contending parties and keep them at peace, and induced Trotter to decline his attempt.
asr*°_ Sion ol the* public notice tliclotieryby two of ,ho ^*1303"
Trustees, or thoi,‘ :;fSIga-*qUit} in an estate con-joyed them a°fte7pvomoS-tingamlieg’d lottery by a'diMribution of the estate, n:r'iao1- de- ' man( of',ne surrender it. who dr.iws a prize and obtains the 1c-legal title and possession, to.
j.or_
Between parIidpes crim'inis,melioresi conililio possidentis.
One having obtained the. legal title to • iottery can not b<; required to surrender to those by whose approbation & concurrence he was drawn into it, nor to their assignee.
*453 The proof however goes further than these admissions, and is clear that Trotter, one of the ors, had drawn up a hand-bill forbidding the lottery, and determined to publish it on the day of drawing, and that two of the trustees, and especially one who appears to be the real owner of this farm, and the acting ope on all occasions, the others barely approving without acting, applied more than once to Trotter to desist and witndraw the hand-bill, alleging that Williamson would be ruined, if the lottery did not go on, and would not be able to pay his debts. And further they assured Trotter, his debt would be paid, and offered to give their own notes with any endorsers to secure the amount of Trotters debt, provided he would suffer the drawing to progress. Trotter accordingly said nothing.
If it be true, as is insisted by the complainants, that the lottery was an illegal or immoral transaction, vvith what.grace can the trustees, or the assignpes of an equity under them, come into a court of equity, and after they had the property secured to them to be safely kept for the payment, of debts, and had in the mean time stood by and connived at the illegal imposition on the public, till numbers were fleeced of their imwiey, and had taken such measures, to remove obstacles out of vho road of tiiat unposition till it was completed, ami demand the estate back again, which was thus disposed of on the cast of the die. Even if the acquisition thereof by White, by an arrangement with Williamson was impure, they might not 'to be permitted to vacate that arrangement which they fostered at the hme with their eyes open, and in which they became pariidpes criminis. For in such-case, mdior est-cotuiitio possidentis.
If White liad the attitude of a purchaser without notice, and also that of a complainant, he would, according to the decisions of this court in the case of Morrison vs. Bobb’s Heirs and Springie, and ihe case of Storrs and Brooks vs. Barker, 6 John. Chy. Rep. 166, be entitled to a conveyance. And as he *454 has here got the legal estate, and was one of tnci ticket holders drawn into the lottery by Williamson, with the acquiescence, and connivance of the trustees, he must be permitted to retain the estate till a claimant comes with snore equity, and not till ^lcn can be be made to surrender,
in such case the acts of The debtor’s trustees affects tile estate, and renders them responsiblo for creditors?1 ^ Asdguce of ího trasteos iu such cuse Clio’ a creditor receives the claim affected as in the hands of íhc trastees.
Responsibility of the trustees to cestui que ira.;'.?,and Uie rights of srediiors.
if may be said that the trustees have in this case no interest, but only hold for creditors.
To this it may be replied that they arc the agents of the creditors and the latter are bound by their acts, and if the creditors have lost this fund by the improper arts of the trustees, the trustees are responsible to them for the loss.
It may be said that Prentiss in this case is first a creditor and also a purchaser from the trustees, and
as such he cannot be affected by their acts. We answer that Prentiss by his purchase could only acquire an equity under the trustees, and claims through and under them, apd be cannot possess a belter title than they field, which was an equity on1 !y; and If that equity was prcwmisly vitiated or de stayed by the improper acts of the trustees, ho must a*J'^e hy and if he was ignorant of it, at the time of his purchase, he, or rather his representatives can have their appropriate redress, indeed in this case it does not appear that lie has yet paid to the creditors the amount of his parchase; hut if he has, and he was innocent of the imposition on the public, he is not remediless,
Nor do we conceive that, the interest o.f the creditors can be prejudiced by this decision. If they claim against the deed, and the title of White was in fraud of their rights, it will bo as accessible to them now as before. If they, claim under the deed, and have done nothing to forfeit their claim, they may have, their redress for tho injury occasioned by the improper acts of their own trustees. In every shape therefore in which wc \ic.w the bearings of the case we conceive that tiie decree, of the court which took the estate from White’s heirs i¡? erroneous.
It must, therefore, he reversed with costs and the cause be remanded, with directions to that court to dismiss the bill with costs as to White’s heirs, a *455 gainst Prentiss’ heirs and the defendant Haggin, and without costs as to the other defendants below,